# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-23-00249-CV
_____

## SILSBEE OAKS HEALTH CARE, L.L.P., Appellant

## V.

## PATRICIA SMART, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF BONNIE SMART, ET AL, Appellees

**On Appeal from the 58th District Court
Jefferson County, Texas
Trial Cause No. A-209436**

## MEMORANDUM OPINION

Silsbee Oaks Health Care, L.L.P. filed an interlocutory appeal from the trial court's denial of its combined motion to dismiss and motion for summary judgment, a motion that relied on section 74.155 of the Texas Civil Practice and Remedies Code (CPRC) to claim the plaintiffs' suit should be dismissed with prejudice. *See* Tex. Civ. Prac. & Rem. Code Ann.

1

§ 74.155 (Supp.). CPRC section 74.155 provides physicians, health care providers, and first responders with an affirmative defense if a patient's injury results from a "pandemic disease," which is defined in section 71.155 as "an infectious disease that spreads to a significant portion of the population of the United States that poses a substantial risk of a significant number of human fatalities, illnesses, or permanent long-term disabilities." *Id.* For convenience, we will refer to section 74.155 as the Pandemic Liability Statute.

The issue raised by the appellees' motion to dismiss is whether the legislature extended an appellate court's jurisdiction to an interlocutory order from a ruling denying a motion based on the affirmative defense created by the Pandemic Liability Statute. We conclude the answer is no. The order from which Silsbee Oaks appeals is an unappealable interlocutory order because it is not one of the types of interlocutory orders covered by the statute that gives appellate courts jurisdiction over a trial court's interlocutory ruling, CPRC section 51.014. *Id.* § 51.014

2

(West & Supp.) (creating limited appellate jurisdiction over seventeen categories of interlocutory orders).[1]

## Background

In September 2020, Bonnie Smart, who was 78 years old, died after being hospitalized for twelve days and treated for pneumonia and a respiratory infection. But before Bonnie was hospitalized, for about three weeks, Bonnie was admitted to Silsbee Oaks to rehabilitate from a surgery that she had undergone at Baptist Hospital to correct a fracture she had suffered to her thigh.

On September 4, Bonnie left Silsbee Oaks in a private car, apparently after her treating physician authorized Silsbee Oaks to discharge Bonnie to her home. Two days later, Bonnie was taken to the emergency room at Baptist Hospital, where she was diagnosed with an infection and intubated. According to Bonnie's death certificate, her death was caused by COVID-19, pneumonia due to viral illness,

---

[1]*See* Act of May 28, 2021, 87th Leg., R.S., ch. 167, § 1, sec. 51.014(a), and ch. 528, § 1, sec. 51.014(a), 2021 Tex. Sess. Law Serv. 355, 1051 (West) (to be codified at Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)) (adding Tex. Civ. Prac. & Rem. Code Ann. §§ 74.155; 51.014(a)(15); 148.001-.005).

Methicillin-resistant Staphylococcus aureus (MRSA), and atrial fibrillation.

In March 2022, Patricia Smart, Individually and as representative of the Estate of Bonnie Smart, Joe Smart, Larry Dale Smart, Otis Von Smart Sr., and Roy Gene Smart (collectively, the Smarts) sued Silsbee Oaks Health Care, L.L.P., alleging that the treatment Bonnie received there fell below the standard of care that applies to a nursing facility. The Smarts also sued Dr. Sama P. Quaraishi, M.D., alleging the medical treatment Bonnie received from her was below the standard of care that applies to family physicians.[2] In general, the Smarts' petition alleges that Bonnie's healthcare providers negligently failed to recognize that Bonnie was at an increased risk of developing pneumonia due to her preexisting condition of chronic obstructive lung disease. That said, the petition never mentions Covid, and it doesn't expressly assert the defendants were negligent in exposing, treating, or failing to treat Bonnie for COVID-19.[3]

---

[2]Dr. Quaraishi is not a party to this appeal.

[3]However, we note that the plaintiffs' expert report, which is attached to the Plaintiffs' Original Petition, is critical of Silsbee Oaks for its failure to "test a patient for COVID-19 upon discharge who is

In a pretrial motion invoking the Pandemic Liability Statute, Silsbee Oaks moved to dismiss the Smarts' suit. *See id.* § 74.155. In its motion, Silsbee Oaks didn't specifically challenge the adequacy of the "expert report" the Smarts filed with their Original Petition to show they had complied with the Texas Medical Liability Act. *See* Tex. Civ. Prac. & Rem. Code Ann. 74.351. Instead, Silsbee Oaks argued it had a right to prevail on its motion because it was undisputed that Covid was a producing cause of Bonnie's injury and death based on the report of the Smarts' expert witness. Additionally, Silsbee Oaks argued that because it was a nursing facility that was following the pandemic disaster directives in complying with discharge orders that required a facility to discharge a patient to the patient's home, its summary-judgment evidence established it was immune from liability for any failure to transfer Bonnie to a hospital rather than discharging her to her home. According to Silsbee Oaks, the directives it was following during the pandemic required beds in hospitals "to be reserved for seriously ill patients." The directives, according to Silsbee Oaks, required it to

exhibiting wheezing and sudden oxygen desaturation." The plaintiffs' expert report also attributes Bonnie's pneumonia to a COVID infection.

5

discharge patients (like Bonnie) who needed long-term care to their homes "to continue [their care] under home health care therapy."

In July 2023, the trial court denied Silsbee Oaks' "Motion to Dismiss Pursuant to Section 74.155 To Pandemic Immunity (filed May 16, 2022), as supplemented by its Supplement to Its Section 74.155 Motion to Dismiss (filed September 6, 2022), and as supplemented by its 2d Supplement to its CPRC Section 74.155 Motion to Dismiss and/or Motion for Summary Judgment (filed on June 29, 2023)." Two days later, Silsbee Oaks filed its notice of accelerated appeal.

## Analysis

After Silsbee Oaks appealed, the Smarts moved to dismiss the appeal. In their motion, the Smarts argue the order that Silsbee Oaks has appealed is an interlocutory order that is unappealable because it is not among the interlocutory orders over which the appellate courts have jurisdiction. That is, the order doesn't fall within the seventeen categories of interlocutory orders over which appellate courts have jurisdiction under CPRC section 51.014.

To be sure, the Pandemic Liability Statute (CPRC section 74.155) is not specifically mentioned anywhere in CPRC 51.014. Still, Silsbee

6

Oaks argues the Court should imply that the legislature intended to allow a healthcare provider to file an interlocutory appeal from a ruling on motions denying a healthcare provider's claim when the appeal is based on a motion relying on the Pandemic Liability Statute. According to Silsbee Oaks, it makes sense to infer a right to interlocutory appeal was intended because the Pandemic Liability Statute creates a defense that changes the causation standard when it applies, and the Smarts' expert report shows it will apply to the trial of their claims. Based on that argument, Silsbee Oaks concludes the legislature must have intended to grant appellate courts jurisdiction over rulings on motions denying a healthcare provider's motion relying on an affirmative causation defense when the patient's injury or death was caused by a pandemic disease. Stated another way, Silsbee Oaks suggests that its Pandemic Liability Statute defense necessarily implicates the sufficiency of the report filed by the Smarts' expert as related to the explanation provided by the Smarts' expert about what caused Bonnie's injury and her death. And because CPRC 51.014(a)(9) allows appellate courts to exercise jurisdiction over a trial court's denial of motions claiming that an "expert report" doesn't comply with the requirements of the Texas Medical

Liability Act under CPRC section 74.351, Silsbee Oaks concludes that appellate jurisdiction must also exist to allow appellate courts to consider challenges to interlocutory rulings on the denial of motions for summary judgment that rely on CPRC 74.155, the Pandemic Liability Statute. *See id*. § 51.014(a)(9) (providing that a person may appeal from an interlocutory order that "denies all or part of the relief sought by a motion under Section 74.351(b), except that an appeal may not be taken from an order granting an extension under Section 74.351").

Turning to the text of the Pandemic Liability Statute, when the legislature created the affirmative defense that applies to injuries or deaths resulting from pandemic diseases, it knew that issues surrounding the causation of a patient's injury or death might often pose questions that hinged on what the healthcare provider knew or suspected about whether the patient had incurred a pandemic disease when the healthcare provider was treating the patient. *See id*. § 74.351(c) ("A physician, health care provider, or first responder may not use the showing under Subsection (b)(2) as a defense to liability under Subsection (b) for negligent care, treatment, or failure to provide care or treatment if a claimant proves by a preponderance of the evidence that the

8

respective diagnosis, treatment, or reasonable suspicion of infection with a pandemic disease at the time of the care, treatment, or failure to provide care or treatment was not a producing cause of the individual's injury or death."). Generally, questions about what a healthcare provider knew and when it knew it are fact-driven. And even though we acknowledge that expert testimony might be relevant to what a healthcare provider knew or should have reasonably suspected, the provider and its employees generally have direct knowledge of what was known, what was reasonably suspected, and when. Given the questions the legislature tied to a court's resolving motions asserting claims under the Pandemic Liability Statute, it appears the legislature chose to make them an affirmative defense rather than part of the criteria by which courts are to measure the sufficiency of an "expert report" the legislature requires healthcare liability claimants to file to comply with the requirements of CPRC section 74.351.

Our conclusion that section 74.155 operates as an affirmative defense rather than as part of the sufficiency criteria that applies to evaluating expert reports is reinforced by the text of subsections 74.155(e), (f), and (g). Subsection (e) provides "[t]his section does not alter

9

the scope of practice of a physician, health care provider or first responder under the laws of this state." In other words, even if conditions involving a pandemic disease exist in much of the population, a nursing home's scope of practice isn't changed. Subsection (f) provides that "[a] defense under this section is in addition to any other defense, immunity, or limitation of liability provided by law." And subsection (g) requires the defendant when sued on a healthcare liability claim to take affirmative steps to place the healthcare liability the plaintiff on notice that the provider intends to rely on the defense, since subsection (g) provides that "[a] . . . health care provider . . . who intends to raise a defense under Subsection (b) must provide to a claimant specific facts that support an assertion under Subsection (b)(1) or (2) not later than" 60 days after the health care provider serves the claimant with the claimant's expert report or 120 days after the health care provider filed its answer. Thus, the legislature gave healthcare providers the duty to raise the defense *after* the healthcare provider had received a report from the claimant's expert report. *See id*. § 74.155(g). Yet the legislature did not require that a healthcare liability claimant supplement the expert report previously filed to comply with the requirements of the Texas Medical Liability Act,

10

section 74.351, or to supplement the expert's report with another report to address the defendant's affirmative defense under the Pandemic Liability Statute.

Here for example, even if Bonnie's death is proven in the trial to have been caused in part by COVID-19, nothing in this record shows that she was diagnosed with COVID-19 or being treated for COVID-19 when she was at Silsbee Oaks, although it does show Bonnie had wheezing and oxygen desaturation. The parties may (or may not) develop facts in discovery that provide the trial court on further motions with a stronger factual basis to rule on a dispositive motion based on Silsbee Oaks' Pandemic Liability Statute defense. But the question before us is not whether Silsbee Oaks is or isn't entitled to a summary judgment; instead, it's whether we have jurisdiction over the appeal because Silsbee Oaks is seeking to appeal from an interlocutory order and not from a final judgment.

"An appellate court lacks jurisdiction to review an interlocutory order unless a statute specifically authorizes an exception to the general rule, which is that appeals may only be taken from final judgments." *Qwest Commc'ns Corp. v. AT&T Corp.*, 24 S.W.3d 334, 336 (Tex. 2000).

Silsbee Oaks points to no specific legislative authorization allowing it to appeal from a ruling denying a motion for summary judgment based on an affirmative defense raised under CPRC section 74.155. We will not imply that a right to interlocutory appeal exists in CPRC section 54.014(9) when the legislature has not expressly granted litigants an interlocutory appeal but otherwise knows how to do so when it wants to, as it has done so seventeen times. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014.

## Conclusion

We conclude section 51.014(a)(9), which allows a party to appeal an interlocutory order, doesn't authorize an accelerated interlocutory appeal from an order denying a combined motion for summary judgment and motion to dismiss under CPRC section 74.155. *See id*. §§ 51.014(a)(9), 74.155, 74.351(b). Accordingly, we grant the appellees' motion to dismiss. The accelerated interlocutory appeal is dismissed for lack of jurisdiction. *See* Tex. R. App. P. 42.3(a), 43.2(f).

APPEAL DISMISSED.

PER CURIAM

Submitted on September 27, 2023
Opinion Delivered September 28, 2023
Before Golemon, C.J., Horton and Johnson, JJ.